UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **MORIAN SPIVEY** | * | **CIVIL ACTION NO. 12-2226** |
| **VERSUS** | * | **JUDGE JAMES T. TRIMBLE, JR.** |
| **WARDEN, DAVID WADE CORRECTIONAL CENTER** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* Petitioner Morian Spivey filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on August 16, 2012. [doc. # 1]. Respondent responded to the petition on November 30, 2012. [doc. # 13]. Petitioner, an inmate in the custody of Louisiana's Department of Public Safety and Corrections incarcerated at the David Wade Correctional Center, Homer, Louisiana, attacks his conviction of and sentence for Second Degree Murder. This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

### BACKGROUND

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal:

> On September 13, 2001, Morian Lavelle Spivey was driving through the campus of Grambling State University on his way to get a haircut. He was not a student at the school. He encountered the victim, a student named Samuel Washington, III. They argued and then began to fight. Although Spivey was significantly larger than the victim, Washington knocked him to the ground after Spivey shoved him. Three of the victim's friends, Rodney Bridgewater, Phillip Madison and Michael Theus, were parked near the scene of the fight and joined it to assist Washington.
>
> Curtis Armand, a university administrator, was driving down the street and noticed the fight. He got out of his vehicle and yelled for the men to stop fighting. After the

>fight broke up, the victim and his friends were running off when Spivey walked to his vehicle, got a gun, and shot Washington.
>
>Aiesha Dicko, a student who was riding in a car on her way to Truth Hall, testified she saw people running. She testified that she saw Washington run in front of the car and up a little hill when he slipped and lost his balance. She saw that while he was hunched over, he was shot by Spivey.
>
>The one shot hit the victim in the chest. Betty Jones Farmer, a nursing instructor at the university, testified about how she ran to the scene and rendered first aid. Efforts to resuscitate Washington failed.
>
>A 9-millimeter shell casing was recovered from the scene by Cornelius Gillis, a member of the Grambling State University Police Department. The weapon was never recovered. Larry C. Garner, an acquaintance of Spivey, testified that on the day of the incident Spivey asked him if he could leave his vehicle parked at his house because he had been in a confrontation on campus. Greg W. Ludley, a Grambling State University police office, was assigned the task of finding the vehicle Spivey drove away from the scene. He testified that it was found at Garner's residence. He said it was hidden from view from the street because it was parked two feet from the house.
>
>The defense called Bridgewater, Madison and Theus as witnesses in an attempt to show that Spivey was afraid of the victim because of a prior altercation between them. It appears that this trial strategy was also an attempt to show that Washington was the aggressor and Spivey acted in self-defense. Instead, the testimony of these three participants in the fight showed that Spivey had been the aggressor with a gun in a fight with Madison in the wee hours of Sunday morning before this incident on the campus. Bridgewater's testimony further showed that Spivey started the physical fight on campus by shoving the victim during an argument. Their testimony also matched that of the state's witnesses who said the fight broke up and the victim ran away from Spivey.

*State v. Spivey*, 874 So. 2d 352, 354-355 (La.App. 2 Cir. 2004).

The jury returned a verdict of guilty of Second Degree Murder and Petitioner was sentenced to life in prison. (R. 296, 375). His appeal to the Second Circuit Court of Appeal was denied on May 16, 2004. *Spivey*, 874 So.2d at 363. Petitioner sought no further direct review from the Louisiana Supreme Court.

On April 25, 2005, Petitioner filed an application for Post Conviction Relief ("PCR") in the Third Judicial District Court raising five claims. (R. 465). PCR claims 3, 4, and 5 were

denied as procedurally barred. (R. 481). After a hearing on the two remaining claims, the trial court denied the claims on the merits. (R. 548). His application for writs was denied by the Second Circuit on October 7, 2011. (R. 589). His writ application to the Louisiana Supreme Court was denied on June 15, 2012. (R. 603).

Petitioner filed the instant petition on August 16, 2012, raising two claims originally argued in his PCR. *See* [doc. # 1]. Specifically, Petitioner argues ineffective assistance of trial counsel for: (1) failing to investigate and interview three trial witnesses before calling them to testify; and, (2) denying Petitioner the right to testify at trial. [doc. # 1-2, P. 8, 20].

The matter is now before the undersigned.

## LAW AND ANALYSIS

### I. Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, ––– U.S. –––, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt*, 230 F.3d at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## II.   Ineffective assistance of trial counsel

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a

4

claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

  a. **Failure to investigate and interview defense witnesses**

Petitioner argues that his trial counsel was ineffective for failure to investigate and interview three defense witnesses before introducing their testimony to the jury. [doc. # 1-2, P. 8]. Specifically, Petitioner argues that trial counsel's "decision to call Rodney Bridgewater, Phillip Madison, and Micahel [*sic*] Theus as witnesses without obtaining individuals [*sic*] statements, or interviewing these witnesses to determined [*sic*] what their testimony would be, ultimately prejudice petitioner's defense." *Id*. at 16.

The state court found that the record "establishes that counsel sent his investigator, a retired police officer, to interview the witnesses." (R. 547). Thereafter, trial counsel "received a telephone call from Cliff Strider, the assistant district attorney who was handling the case, advising counsel that someone claiming to be a police officer had tried to interview the three witnesses." *Id.* However, after sending his investigator, the court found that trial counsel "placed them on the witness stand without further investigation as to what their testimony would be." *Id.* Ultimately, the trial court concluded that Petitioner's claim "lacks merit and must be denied" because "the evidence does not establish that the outcome of this case would have been different" if counsel personally interviewed the witnesses prior to calling them. *Id.*

An attorney's strategic choices, usually based on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, "are virtually unchallengeable." *Strickland*, 466 U.S. at 691. The Fifth Circuit has repeatedly held that the reasonableness of an attorney's investigation may critically depend on the information forwarded by the defendant and the defendant's own strategic decisions about his representation. *Id*. (stating that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable"). However, an attorney must engage in a reasonable amount of pretrial investigation and "at a minimum, . . . interview potential witnesses and . . . make an independent investigation of the facts and circumstances in the case." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985). The failure to interview eyewitnesses to a crime may strongly support a claim of ineffective assistance of counsel, *see Gray v. Lucas*, 677 F.2d 1086, 1093 n.5 (5th Cir.1982) (noting that attorney's failure to investigate crucial witness may constitute inadequate performance), and when alibi witnesses are involved, it is unreasonable for counsel not to try to contact the witnesses and "ascertain whether their testimony would aid the defense." *Grooms v.*

6

*Solem*, 923 F.2d 88, 90 (8th Cir.1991)

The undersigned can not find that the state court's decision to dismiss this claim was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. As Respondent properly points out, and the state court determined, Petitioner personally sent out an investigator to interview the witnesses in question. (R. 564). Thereafter, trial counsel was contacted by the lead prosecutor who told him of the investigator's attempts to contact the witnesses while impersonating a police officer. *Id.* Because of this incident, it became "apparent [to trial counsel] that [the witnesses] did not want to speak with" the defense. *Id.* As Respondent properly states "no mechanism exists . . . whereby defense counsel may force a witness to give the defense team a separate statement than the one provided to the State . . . therefore, no additional avenues were available to [trial] counsel." [doc. # 13]. Accordingly, Petitioner's first claim of ineffective assistance of counsel lacks merit because he has failed to show that his attorney's actions fell outside the wide range of professionally competent assistance.

      b.      **Prevention of Petitioner from testifying**

In Petitioner's final claim, he alleges that his trial counsel "rendered inadequate performance when he prevented Petitioner from testifying after unequivocally express[ing] his desire to do so." [doc. # 1-2, P. 20]. The state court found that the "evidence demonstrates that counsel adamantly informed defendant that counsel did not need or want petitioner to testify," but did not prevent Petitioner from testifying on his own behalf. (R. 546). The court concluded that "petitioner's evidence is insufficient to overcome the presumption of a valid waiver of his right to testify." *Id.*

The Supreme Court has recognized a criminal defendant's right to testify is fundamental

and personal to the defendant. "Only such basic decisions as to whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make." *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977). However, "choices about trial practice and management . . . are committed to counsel, not only because they are numerous but also because they are the sort of choices for which legal training and experience are most helpful." *United States v. Flores-Martinez*, 677 F.3d 699, 711 (5th Cir. 2012) (quoting *United States v. Babul*, 476 F.3d 498, 500 (7th Cir. 2007)). When a criminal defendant "chooses to have a lawyer conduct the defense, the lawyer gets to conduct the defense and not just whisper advice in the defendant's ear each time a decision must be made." *Id.* "Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify." *Id.*

  Here, again, the undersigned cannot find that the state court's decision to dismiss this claim was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The record at the PCR hearing reveals that Petitioner knew he had the option to testify, as trial counsel discussed with him prior to trial whether or not he would testify. (R. 563). In fact, Petitioner testified that trial counsel "didn't say I couldn't testify . . . [he said] he didn't want me to testify or he didn't need me to testify." (R. 577). Moreover, defense counsel testified that Petitioner "wanted to testify but I was very adamant against him testifying. I remember having several conversation where . . . he said fact is he wanted to testify and I always adamantly . . . advised him that him testifying would not be in his best interest . . ." (R. 563).

  Therefore, Petitioner is unable to overcome the presumption that he waived his right to testify, and accordingly, Petitioner's ineffective assistance of trial counsel claims should be

**DENIED**.

### CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner Morian Spivey [doc. # 1] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 8th day of January, 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE